UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**KRISTIE F.,**

      **Plaintiff,**

      v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 1:20-cv-13815
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Kristie F. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.   PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income on January 16, 2017, and January 17, 2017, respectively, alleging that she has been

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

disabled since April 26, 2015. R. 111–12, 145–46, 229–37. The applications were denied initially and upon reconsideration. R. 149–54, 163–68. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 169–70. Administrative Law Judge ("ALJ") Lisa Hibner Olson held a hearing on June 20, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 36–82. In a decision dated August 6, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 26, 2015, Plaintiff's alleged disability onset date, through the date of that decision. R. 15–29. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 13, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 21, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[2] On the same day, the case was reassigned to the undersigned. ECF No. 12. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 39 years old on her alleged disability onset date. R. 27. She met the insured status requirement, for purposes of disability insurance benefits, through June 30, 2020. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between April 27, 2015, her alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff's seizure disorder, neurocognitive disorder, status-post surgical removal and treatment of astrocytoma of the brain, and obesity were severe impairments. *Id.* The ALJ also found that Plaintiff's diagnosed kidney disease, hyperlipidemia, hypothyroidism, and bradycardia with syncope were not severe impairments. R. 18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–20.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various additional limitations. R. 20–26. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a bus attendant and as a cleaner, housekeeping. R. 27–28.

Alternatively, at step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 700,000 jobs as a bottling line attendant; approximately 200,000 jobs as a bakery

worker/conveyor; approximately 190,000 jobs as a lens inserter—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 28. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 26, 2015, her alleged disability onset date, through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Acting Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 17. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 16.

IV.   SUMMARY OF RELEVANT MEDICAL INFORMATION

In August 2017, Andrea Casher, Psy.D., evaluated Plaintiff's cognitive functioning in connection with complaints of daily seizures and a brain tumor that had been resected and treated with radiation in 1989. R. 560–67. Dr. Casher administered several tests during this examination. R. 564–67. On the grooved pegboard test of her motor functioning, Plaintiff achieved a T-score of 5, reflecting less than the bottom tenth of one percent (<0.1), with her right (dominant) hand and a T-score of 4, again reflecting less than the bottom tenth of one percent (<0.1) with her left (non-dominant) hand. R. 565. Plaintiff passed the embedded indices of effort (the Reliable Digit Span) on the WAIS-IV. R. 566 (reflecting a Reliable Digit Span score of 7). *Id. See United States v. White*, No. 17-CR-00313-01, 2020 WL 2450026, at *2 (W.D. La. Apr. 13, 2020), ("The Reliable Digit Span Score is an indicator of whether an examinee is putting forth adequate effort. Defendant's Reliable Digit Span score was 8, which indicated that he was putting forth adequate

effort on the cognitive tests."), *report and recommendation adopted*, No. CR 17-00313-01, 2020 WL 2404914 (W.D. La. May 12, 2020). Dr. Casher went on to explain Plaintiff's test results as follows:

> Intellectual Functioning:
> Relative to individuals of comparable age, Ms. [F.'s] overall intellectual abilities were in the low average range. Overall verbal expression and word knowledge was in the low average range, while abstract perceptual reasoning skills were in the average range.
>
> Academic Achievement:
> Performance on a word reading task was within the average range, consistent with level of education.
>
> Learning and Memory:
> Ms. [F.'s] auditory working memory for digits was in the low average range overall, but she failed an effort indicator associated with this task. Learning and memory were assessed in both verbal and visual modalities. Ms. [F.] demonstrated average immediate recall for stories and borderline delayed recall. With recognition cuing, her performance improved to the low average range. Memory for words, however, was poor, and Ms. [F.] failed an effort indicator associated with this task. Learning and memory for visual materials was impaired for immediate and delayed recall of discreet designs, but low average recognition following a long delay. Memory for a complex figure was mildly impaired, likely secondary to the disorganized encoding of the design.
>
> Language Functioning:
> On a measure of object naming, Ms. [F.'s] performance fell within the low average range of functioning. Comprehension of questions and serial commands was intact.
>
> Visuospatial, Perception, and Constructional Skills:
> Ms. [F.] demonstrated average duplication of complex block designs, but her copy of a complex figure was severely impaired. Visual spatial al [sic] cognition (judgment of line orientation abilities) was low average.
>
> Motor Functioning:
> *On a test of fine motor speed and dexterity, Ms. [F.] demonstrated severely impaired abilities with her dominant hand and non-dominant hand.*
>
> Executive Functioning:
> Ms. [F.s'] verbal fluency to a letter cue fell within the borderline range. When provided with a category cue, her performance weakened, falling with the extremely low range of functioning. On a timed measure of visual scanning and psychomotor sequencing of numbers, her performance fell in the low average range

> and she committed two impulsive errors. Similarly, when the test was made more challenging, requiring increased working memory and set-shifting skills, her performance was low average for speed and noteworthy for one error. Ms. [F.] was also administered a test of novel problem-solving that requires mental flexibility, categorical reasoning, and the ability to incorporate examiner feedback in order to adjust one's responses. Her performance on this measure was weak, as she was able to successfully complete only two categories.
>
> [Ms. F.] completed the BRIEF-A informant report. She endorsed items consistent with metacognitive difficulties, particularly affecting working memory, and planning and organizing, as well as decreased self-monitoring. Overall, report indicates that Ms. [F.] is demonstrating global executive deficits.
>
> Affect/Emotional Functioning:
> Consistent with her reports during the clinical interview, Ms. [F.] reported minimal experiences of low mood and/or anxiety.

R. 562–63 (emphasis added). Dr. Casher summarized her findings as follows:

> [Kristie F.] is a 41year-old, single, right handed female with a history of seizures and resected brain tumor and radiation. Due to Ms. [F.'s] somewhat variable effort, results were interpreted cautiously, as they may underestimate her abilities. Overall performance on this neuropsychological evaluation revealed low average overall intellectual abilities, with low average verbal reasoning and average visual spatial problem solving. *Ms. [F.] demonstrated skills felt to be consistent with her baseline in the areas of naming, working memory, processing speed, immediate and delayed contextual verbal memory, and most aspects of visuospatial and perceptual skills*. Performance was impaired on executive function tasks, including verbal fluency, sequencing, and higher level nonverbal problem solving. Ms. [F.] performed poorly on a list learning measure and visual memory was impaired, but her effort was variable on these tasks. *Motor skills were slow bilaterally*. Behaviorally, Ms. [F.] demonstrated diminished frustration tolerance. She was disinhibited socially. Emotionally, she denied any difficulties.
>
> Taken together, Ms. [F.'s] pattern of performance and her behavioral difficulties are consistent with her history of neurological insult stemming from her tumor, treatment, and seizures.

R. 563 (emphasis added).

## V.  DISCUSSION

The ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations:

10

> The claimant cannot climb ladders, ropes, or scaffolds. The claimant cannot be exposed to workplace hazards such as moving machinery or unprotected heights. The claimant is able to perform simple, routine, repetitive tasks, and is able to interact frequently with supervisors, co-workers, and the public. The claimant is not able to drive or operate motor vehicles.

R. 20–21. Plaintiff challenges this determination, complaining that the ALJ's RFC determination does not include the limitations reflected in Dr. Casher's test results and report. *Plaintiff's Brief*, ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 17. This Court agrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In crafting Plaintiff's RFC, the ALJ considered Dr. Casher's report and test results as follows:

> The claimant was evaluated by neuropsychologist, Andrea Casher, Psy.D., in August of 2017. Exhibit 13F/4. The claimant and her mother described concerns about memory, decreased motivation and initiation, but denied depression. Dr. Casher observed that the claimant's speech and affect were normal. She also found that the claimant's intellectual functioning was in the low average range, while abstract reasoning was in the average range. As far as learning and memory, testing showed memory for digits was in the low average range, although the claimant failed an effort indicator associated with this task. Other areas of memory showed poor to mildly impaired function. Exhibit 13F. The claimant also demonstrated global executive deficits. Exhibit 13F. Dr. Casher stated that the test results may underestimate her abilities, given the claimant's somewhat variable effort. Exhibit 13F/4.

R. 24–25; *see also* R. 26 ("Dr. Casher found impairment in executive function, although she did comment that test results may underestimate the claimant's abilities, given the claimant's somewhat variable effort. . . . Although… Dr. Casher found memory impairment, mental status examinations showed largely normal findings.").

Plaintiff complains that, although the ALJ noted Dr. Casher's report and acknowledged some of her test findings, the ALJ ignored other test results, including, *inter alia*, Plaintiff's poor performance on the pegboard test. *Plaintiff's Brief*, ECF No. 15, pp. 25–29; *Plaintiff's Reply Brief*, ECF No. 17, pp. 10–12. Plaintiff further argues that the ALJ's failure to include any manual limitations in the RFC and her failure to explain this omission was not harmless. *Id*. The Acting Commissioner counters that Dr. Casher's report was not a medical opinion that triggered special consideration under 20 C.F.R. §§ 404.1527, 416.927. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 16, p. 13. The Acting Commissioner further argues that, in any event, the ALJ discussed Dr. Casher's report and Plaintiff's complaints amount to nothing more than an impermissible request to reweigh the evidence. *Id*. at 13–15.

12

The Acting Commissioner's arguments are not well taken. An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. Moreover, the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, an ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *cf. Fargnoli,* 247 F.3d at 42 ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In the case presently before the Court, the ALJ did not acknowledge Dr. Casher's finding that Plaintiff's test performance reflected severely impaired abilities with both hands, nor did the ALJ include any motor limitations in the RFC. R. 15–29, 562. Moreover, the ALJ offered no explanation for this omission. R. 20–27. Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705). The ALJ's omission in this regard and failure to explain this omission take on even greater significance when one considers that the vocational expert, upon whose testimony the ALJ relied, R. 27–29, testified that a score of less than one-tenth of a percent for both hands on the grooved pegboard test would preclude virtually all jobs, including the jobs that the expert had identified in response to the ALJ's hypothetical and on which the ALJ relied in her decision. R. 74–76. Based on this record, the Court cannot conclude that the ALJ's failure in this regard is harmless or that substantial

13

evidence supports the ALJ's RFC determination. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stating that the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"); *Diggin v. Saul*, No. CV 19-0022, 2019 WL 3495593, at *10 (E.D. Pa. July 31, 2019) ("Inadequate discussion that leaves a court to speculate on what evidence led the ALJ to the conclusions set forth in the decision precludes any meaningful judicial review.") (citations omitted); *Sanford v. Comm'r of Soc. Sec.*, No. CIV. 13-0366 NLH, 2014 WL 1294710, at *2 (D.N.J. Mar. 28, 2014) ("The Third Circuit has held that access to the Commissioner's reasoning is [ ] essential to a meaningful court review.") (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

This Court therefore concludes that remand of the matter for further consideration is appropriate even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be

reversed, and the matter must be remanded to the Commissioner for further consideration of these issues.[3]

## VI.     CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  March 16, 2022                                             *s/Norah McCann King*
                                                                                    NORAH McCANN KING
                                                                        UNITED STATES MAGISTRATE JUDGE

---

[3] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the RFC and Dr. Casher's test results, the Court does not consider those claims.